UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ROWEN,<br><br>  Plaintiff,<br><br>  v.<br><br>WILLIAM PRASIFKA, et al.,<br><br>  Defendants. | Case No. 23-cv-02806-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 48 |

Defendants William Prasifka, Reji Varghese, Jannsen Tan, California Attorney General Rob Bonta, John S. Gatschet, and Caitlin Ross move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss self-represented Plaintiff Robert Jay Rowen's amended complaint challenging the suspension and eventual revocation of his medical license. [Docket No. 48.] This matter is suitable for resolution without a hearing.[1] Civ. L.R. 7-1(b). For the following reasons, the motion to dismiss is granted.

## I. REQUEST FOR JUDICIAL NOTICE

Defendants ask the court to take judicial notice of the August 25, 2023 Decision of the Medical Board of California adopting the Proposed Decision in "In the Matter of the Accusation Against: Robert Jay Rowen, M.D., Respondent" and "In the Matter of the Automatic Suspension Against: Robert Jay Rowen, M.D., Respondent." [Docket No. 49 (Request for Judicial Notice, "RJN," Ex. A (CMB Decision).] Defendants contend that the document is judicially noticeable under Federal Rule of Evidence 201(b) as a public record. *See* RJN. Plaintiff does not oppose the request for judicial notice.

---

[1] On June 24, 2024, after the court vacated the hearing on this motion, Plaintiff filed a request for a hearing on the request for judicial notice. [Docket No. 62.] The request is denied, as Plaintiff did not oppose Defendants' request for judicial notice.

1    The court takes judicial notice of the existence of the CMB Decision and the allegations therein, although it does not take judicial notice of disputed facts within the document. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); Fed. R. Civ. P. 201 (court may take judicial notice of facts "not subject to reasonable dispute"); *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("a court may take judicial notice of 'records and reports of administrative bodies.'").

## II.   BACKGROUND

Plaintiff filed this lawsuit in June 2023 alleging the Medical Board of California ("CMB") wrongfully suspended his medical license in October 2022 and that his license remained suspended even though he had not received a hearing or a trial. *See* Compl. 2-5. The complaint was brought against Defendants William Prasifka, the former executive director of CMB; Reji Varghese, CMB's acting executive director; and Deputy Attorney General for the State of California Jannsen Tan. The complaint alleged that Prasifka "initiated the process," that Varghese "continues the process," and that Tan represents Prasifka and Varghese and "is prosecuting the actions against" Plaintiff. *Id*. at 5. It further alleged that Defendants lacked authority to take actions with respect to Plaintiff's medical license because they failed to post bonds before taking office and thus violated his Fifth Amendment rights and rights under the California Constitution. *See generally* Compl.

Defendants moved to dismiss the complaint. The court granted the motion to dismiss on the grounds that Plaintiff "identifie[d] no statutory authority requiring individuals holding Defendants' offices to post bonds" and the complaint did not otherwise state a claim for relief. It granted Plaintiff leave to file an amended complaint. *Rowen v. Prasifka*, No. 23-CV-02806-DMR, 2023 WL 8587270, at *3-4 (N.D. Cal. Dec. 11, 2023).

Plaintiff timely filed the amended complaint ("FAC"). [Docket No. 30.] The FAC names the following Defendants: 1) Prasifka, in his official capacity as Executive Director of CMB and in his individual capacity; 2) Varghese, in his official capacity as "Interim" Executive Director of

CMB and in his "private-person" capacity; 3) Tan, in his official capacity as a "contract attorney Executive Director" of CMB and in his individual capacity; 4) Rob Bonta, Attorney General for the State of California, in his official and individual capacities; 5) John Stanley Gatschet, Deputy Attorney General for the State of California, in his official and individual capacities; and 6) Caitlin Ross, Deputy Attorney General for the State of California, in her official and individual capacities. *See* FAC 1 (caption), ¶¶ 3-10, 47, 72, 81, 93, 111, 142.[2]

The FAC challenges the suspension and eventual revocation of Plaintiff's medical license. It alleges that CMB "first suspended the Plaintiff['s] medical license and then offered a SHAM MOCK HEARING to confirm their abuse of power and discretion to prevent Plaintiff[ ] from lawfully practicing medicine, a lifelong profession." FAC ¶ 14. Prasifka initiated the proceedings against Plaintiff's medical license via an "Accusation" and Prasifka and Varghese continued the proceedings as the "Complainants." *See* FAC ¶¶ 25, 58, 73, 92, 107, 108. Defendant Tan drafted the Accusation and represented Varghese and Prasifka in the proceedings. *See id.* at ¶¶ 52, 55, 56, 59, 101, 114. The FAC alleges that Defendants Bonta, Gatschet, and Ross were listed as attorneys for the Complainants in the proceedings and that Bonta and Gatschet are liable to the extent that they "failed to supervise" the attorneys involved in the proceedings. *See id.* at ¶¶ 7-9, 47, 72, 93.

The CMB Decision describes the process of suspension and revocation of Plaintiff's medical license as follows: on September 29, 2021, Plaintiff "was convicted on his guilty plea of violating Title 26, United States Code, section 7201 (tax evasion), as set forth in his plea agreement" and was sentenced to serve 18 months in federal prison. Plaintiff was also ordered to pay a $95,000 fine and $241,156.28 in restitution. CMB Decision at ECF pp. 5, 6. On October 7, 2022, Prasifka "signed and caused to be filed an Accusation . . . alleging that cause exists to discipline" Plaintiff's Physician's and Surgeon's Certificate "based on a felony conviction for tax

---

[2] The FAC also includes allegations about Steve Diehl, a Supervising Deputy Attorney General, but Diehl is not listed in the caption and Plaintiff did not serve Diehl with the summons and FAC. Defendants note that the FAC refers to both Diehl and Gatschet as "Doe II" and that it appears that the inclusion of Diehl in the FAC appears to be "erroneous." Mot. 2. Plaintiff does not reference Diehl in his opposition or respond to Defendants' claim that Diehl has not been served, and it appears that he does not seek to bring claims against Diehl. Accordingly, any claims against Diehl are dismissed.

3

1  evasion and related acts of dishonesty or corruption substantially related to the qualifications,

2  functions, or duties of a physician" (the "Accusation"). *Id*. at ECF p. 4. According to the CMB

3  Decision, Plaintiff's certificate was suspended effective September 1, 2022 pursuant to California

4  Business and Professions Code section 2236.1(a) "[b]ased on [Plaintiff's] felony conviction and

5  subsequent incarceration." *Id*. at ECF pp. 4-5. In relevant part, California Business and

6  Professions Code section 2236.1(a) provides that "[a] physician and surgeon's certificate shall be

7  suspended automatically during any time that the holder of the certificate is incarcerated after

8  conviction of a felony, regardless of whether the conviction has been appealed."

9  Plaintiff "timely filed a Notice of Defense" in response to the Accusation and the matter

10  was set for an evidentiary hearing before an Administrative Law Judge ("ALJ") at California's

11  Office of Administrative Hearings, "OAH." CMB Decision at ECF pp. 4-5. A hearing was held

12  on June 19, 2023. Tan appeared on behalf of Varghese. *See id*. at ECF p. 3-4. According to the

13  CMB Decision, Plaintiff "made a 'special appearance' to object to OAH's jurisdiction, then exited

14  before the hearing commenced. [Plaintiff] was not represented at the hearing and did not present

15  any evidence." *Id*. at ECF p. 4.

16  On July 18, 2023, the ALJ issued a Proposed Decision finding that "[c]ause existed to

17  automatically suspend [Plaintiff's] certificate during his term of incarceration" pursuant to

18  California Business and Professions Code section 2236.1(a). The ALJ also found that Plaintiff's

19  "crime of tax evasion is substantially related to the practice of medicine" and that "[c]ause exists

20  to discipline [Plaintiff's] certificate" pursuant to California Business and Professions Code

21  sections 2234(e) and 2236(a).[3] *Id*. at ECF pp. 8-10. The ALJ concluded that Plaintiff's "offenses

---

[3] California Business and Professions Code section 2234 provides that the Medical Board of California "shall take action against any licensee who is charged with unprofessional conduct." Such action may include license revocation following a hearing. California Bus. & Prof. Code § 2227(a)(1). "Unprofessional conduct" includes "[t]he commission of any act involving dishonest or corruption that is substantially related to the qualifications, functions, or duties of a physician and surgeon," Cal. Bus. & Prof. Code § 2234(e), and "[t]he conviction of any offense substantially related to the qualifications, functions, or duties of a physician and surgeon[.]" Cal. Bus. & Prof. Code § 2236(a). "For the purposes of denial, suspension or revocation of a license . . . a crime, professional misconduct, or act shall be considered to be substantially related to the qualifications, functions or duties of a person holding a license if to a substantial degree it evidences present or potential unfitness of a person holding a license to perform the functions authorized by the license in a manner consistent with the public health, safety or welfare."

4

were quite severe" and that "public protection requires revocation of [his] certificate." *Id*. at ECF p. 11. On August 25, 2023, CMB adopted the Proposed Decision, effective September 25, 2023. *Id*. at ECF p. 2.

The FAC is at times confusing and difficult to follow. It appears to allege nine claims for relief under 42 U.S.C. § 1983: 1) violation of the Eighth and Fourteenth Amendments based on Defendants' arbitrarily and capriciously denying "Plaintiff's livelihood" by seizing his medical license without due process or a trial by jury via the Accusation, see FAC ¶¶ 24-31; 2) violation of the Fifth and Fourteenth Amendments based on the seizure of his medical license without due process; 3) violation of the Sixth Amendment based on the Accusation; 4) deprivation of unspecified rights based on Defendants' lack of standing to bring the Accusation; 5) a challenge to California Business and Professions Code section 2236(a) as "void for vagueness" and unconstitutional as applied to Plaintiff, *see id*. at ¶ 102; 6) violation of the Fourth Amendment; 7) enforcement of "an unconstitutional Bill of Attainder" by depriving Plaintiff of the right to make a living, *see id*. at ¶ 118; 8) violation of the Sixth and Seventh Amendments based on the denial of a jury trial; and 9) violation of the federal and states' separation of powers doctrine, *see id*. at ¶ 136.

Defendants now move pursuant to Rule 12(b)(6) to dismiss the FAC.[4] Plaintiff opposes the motion. [Docket No. 55.][5]

---

Cal. Code Regs. tit. 16, § 1360(a).

[4] Defendants' motion also cites Rule 12(b)(1), but they do not present any argument that the court lacks subject matter jurisdiction in this case. Accordingly, the court will analyze the motion under Rule 12(b)(6).

[5] Plaintiff filed a 35-page opposition brief in violation of Local Rule 7-3(a) and 7-4(b), which provide that any opposition may not exceed 25 pages of text. Plaintiff is admonished to familiarize himself with the Local Rules.

Additionally, Plaintiff filed four exhibits to his opposition, including affidavits. [Docket Nos. 55-1, 55-2, 55-3, 55-4.] When ruling on a motion to dismiss, the court may consider only facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Accordingly, the court does not consider the exhibits in deciding this motion.

### III. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation marks omitted) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions, that "plausibly give rise to an entitlement to relief. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quotations and internal citations omitted).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, "a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

### IV. DISCUSSION

#### A. Eleventh Amendment

Plaintiff sues all Defendants individually and in their official capacities seeking monetary

1  relief. Defendants move to dismiss all claims against Defendants in their official capacities based
2  on immunity under the Eleventh Amendment. Mot. 7.[6]

3   "Personal-capacity suits seek to impose personal liability upon a government official for
4  actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In
5  contrast, "an official-capacity suit is, in all respects other than name, to be treated as a suit against
6  the entity." *Id*. at 166. Unless waived, the Eleventh Amendment bars a federal court award of
7  damages against a state, state agency, or state official sued in an official capacity. *Id.* at 169. As
8  there has been no waiver here, Plaintiff's claims for monetary damages against Defendants
9  Prasifka, Varghese, Tan, Bonta, Gatschet, and Ross in their official capacities are dismissed
10 without leave to amend.

### B. Claims for Supervisory Liability

Plaintiff sues Defendants Bonta and Gatschet based on their roles as supervisors. A supervisor may be liable under 42 U.S.C. § 1983 only upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "There is no respondeat superior liability under section 1983." *Id*. Even at the pleading stage, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

The FAC includes the following allegations regarding Bonta:

- Bonta "is sued . . . in his individual capacity to any degree he is found to have usurped the office and duties the Carla Rodriguez, the duly ELECTED, District Attorney of Sonoma

---

[6] Under Ninth Circuit law, dismissal based on Eleventh Amendment immunity should be analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1). *See Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 949 n.1 (N.D. Cal. 2014) (collecting cases).

7

1           county." FAC ¶ 7.

2    - Bonta is "listed as Attorney for Complainant" on the Accusation. *Id*. at ¶¶ 47, 93

3           (emphasis removed).

4    - Bonta is Tan's "superior" and "had the authority [to] deputize, hire, or fire [and] also has

5           as a duty as the respondeat superior to supervise his deputies and staff." *Id*. at ¶ 53.

6    - Bonta (and others) may have given Prasifka "poor legal advice." *Id*. at ¶¶ 72, 81, 111.

7    - Bonta (and others) "negligently, intentionally and recklessly deprived the Plaintiff of a fair

8           hearing and fundamental due process . . . by blurring and/or combining the investigative,

9           prosecutorial and advocacy functions." *Id*. at ¶ 142.

These allegations are speculative and conclusory. The SAC does not plausibly allege that Bonta "directed, participated in, or had knowledge of any alleged misconduct" by the Defendants involved in the medical license suspension and revocation process, *see Taylor*, 880 F.2d at 1045, or that there was a causal connection between any wrongful conduct by Bonta and the alleged violations of Plaintiff's constitutional rights. The allegations regarding Gatschet are similarly deficient. The FAC alleges only that Gatschet is "sued . . . in his individual capacity to any degree he is found to have failed to supervise the attorneys involved with the prosecution (persecution) or defense in regard to the matter Robert J. Rowen, vs William Prasifka, of the Medical Board of California vs. Robert Jay Rowen M.D. OAH #800-2019-061315." FAC ¶ 9. Accordingly, the claims against Bonta and Gatschet are dismissed with leave to amend.

### C. Claims Against Defendant Ross

Defendants move to dismiss any claims against Ross on the ground that the FAC does not allege that Ross "personally participated in any action that [Plaintiff] alleges violated his rights, or that her personal involvement in this case concerned anything other than having her name listed as one of the attorneys in an accusation filed in an administrative hearing." Mot. 4.

Generally, a government official is only liable for their own misconduct. *Iqbal*, 556 U.S. at 677. The FAC contains few allegations about Ross. Specifically, it alleges that Ross is "listed as Attorney for Complainant" on the Accusation, FAC ¶¶ 47, 93; Ross (and others) may have given Prasifka "poor legal advice," *Id*. at ¶¶ 72, 81, 111; and that Ross (and others) "negligently,

8

intentionally and recklessly deprived the Plaintiff of a fair hearing and fundamental due process . . . by blurring and/or combining the investigative, prosecutorial and advocacy functions." *Id*. at ¶ 142.

Plaintiff does not respond to this argument in his opposition and thus concedes it. Accordingly, any claims against Ross in her individual capacity are dismissed without leave to amend.

### D. Remaining Claims

The remaining claims are brought against Defendants Prasifka, Varghese, and Tan in their personal capacities. The claims challenge the administrative process by which Plaintiff's medical license was suspended and eventually revoked.

42 U.S.C. § 1983 "imposes civil liability on an individual who 'under color [of state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws.'" *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (quoting 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Defendants move to dismiss the FAC on the ground that it fails to sufficiently allege that Plaintiff's constitutional rights were violated.[7]

#### 1. Claims Challenging the Process of Suspension and Revocation of Plaintiff's Medical License (Claims 1, 2, 3, 6, 7, 8, and 9)

Claims 1, 2, 3, 6, 7, 8, and 9 challenge the administrative process that resulted in the suspension and revocation of Plaintiff's medical license. The FAC cites various constitutional provisions, including the Eighth and Fourteenth Amendments (claim 1), the Fifth and Fourteenth Amendments (claim 2), the Sixth Amendment (claim 3), the Fourth Amendment (claim 6), and the Sixth and Seventh Amendments (claim 8). Relatedly, claim 7 alleges the administrative hearing

---

[7] Defendants' motion unhelpfully groups Plaintiff's allegations together without analyzing the FAC on a claim-by-claim basis, making it difficult to evaluate the motion and analyze each claim.

9

1 was a "sham mock hearing" and claim 9 alleges that Defendants denied Plaintiff a fair hearing.

2 At bottom, these claims all concern challenges to procedural due process, which is governed by the Fourteenth Amendment. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (the "Fourteenth Amendment explicitly prohibits deprivations without due process by the several States"). Plaintiff alleges that that he was deprived of his "livelihood (the right to earn a living in the lawful and honorable profession as a Medical Doctor)" and that his license was seized before a due process hearing (FAC ¶¶ 46, 61), that the administrative hearing was a "sham MOCK" hearing (*Id*. at ¶¶ 55, 113), that Defendants acted "arbitrarily and capriciously" (*Id*. at ¶¶ 64, 65); that Defendants "charged" Plaintiff via an unverified accusation (*Id*. at ¶¶ 73, 84, 90, 111); and that Defendants effected an unlawful "seizure" (*Id*. at 23). *See also* FAC ¶¶ 69, 124, 125.

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Defendants generally argue that the FAC fails to state a claim for violation of the Fourteenth Amendment's due process clause because "Plaintiff was afforded a fair opportunity to challenge the decision to suspend his medical license and present a defense" under the state statutory procedure set forth in the California Administrative Procedure Act, California Government Code section 11500 *et seq*. Mot. 10. Defendants do not challenge the first two elements of the claim.

The fundamental requirements of due process are notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 348 (1976) (quotations omitted). California Government Code section 11503 authorizes the initiation of the process of disciplining and revoking licenses. It provides:

> A hearing to determine whether a right, authority, license, or privilege should be revoked, suspended, limited, or conditioned shall be initiated by filing an accusation . . . [t]he accusation . . . shall be a written statement of charges that shall set forth in ordinary and concise language the acts or omissions with which the respondent is

10

> charged, to the end that the respondent will be able to prepare their defense. It shall specify the statutes and rules that the respondent is alleged to have violated, but shall not consist merely of charges phrased in the language of those statutes and rules. The accusation . . . shall be verified unless made by a public officer acting in their official capacity or by an employee of the agency before which the proceeding is to be held. The verification may be on information and belief.

Cal. Gov't Code § 11503(a). A proceeding commenced by an accusation "is civil in nature, intended to protect the public rather than punish the licensee." *Frankel v. Board of Dental Examiners*, 46 Cal. App. 4th 534, 543 (1996); *see also Brown v. State Dep't of Health*, 86 Cal. App. 3d 548, 556 (1978) ("The revocation or suspension of a license is not penal, the Legislature has provided for suspension to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty or integrity."). Under California Government Code section 11506(a), the person against whom an accusation is filed (the "respondent") may provide "a notice of defense" in which they request a hearing, object to the accusation on various grounds, and "[p]resent new matter by way of defense."

Here, the FAC repeatedly references the Accusation through which Defendants initiated disciplinary and revocation proceedings against Plaintiff. *See generally* FAC. The Accusation was signed by Defendant Prasifka. CMB Decision 2, ¶ 2; FAC ¶ 46. Plaintiff does not dispute that he received notice of the proceedings, and according to the CMB Decision, Plaintiff "timely filed a Notice of Defense." CMB Decision 3, ¶ 4.

A hearing was set for June 19, 2023. *Id*. at 1. Plaintiff admits that a hearing was held, although the FAC alleges that it was a "SHAM MOCK HEARING." FAC ¶ 14. According to the CMB Decision, Plaintiff "made a 'special appearance' to object to OAH's jurisdiction, then exited before the hearing commenced" and "did not present any evidence." CMB Decision 2. Defendant Tan appeared. *Id*.; FAC ¶ 55. Following the hearing, Plaintiff's medical license was revoked. CMB Decision 10.

The FAC does not allege that the proceedings failed to comply with the procedures set forth in California Government Code sections 11503 and 11506. Nor does it allege that Plaintiff

11

was denied notice and an opportunity to be heard. *See Mathews*, 424 U.S. at 333, 348. The Ninth Circuit has repeatedly held that the hearings under the California Administrative Procedure Act satisfy due process requirements. *See Sheikh v. Medical Board of California*, 471 Fed. Appx. 713, 713 (9th Cir. 2012) (affirming dismissal of procedural due process claim because process plaintiff was afforded, "which included a full hearing before an administrative law judge, and the California statutory scheme under which she was afforded that process, provided a meaningful opportunity to be heard," citing *Mathews*); *Shaw v. State of California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 606 (9th Cir. 1986) (noting that hearings conducted under California Government Code section 11500 *et seq*. meet due process requirements). A refusal by Plaintiff to participate in the hearing does not amount to a Fourteenth Amendment procedural due process violation, and Plaintiff offers no authority to the contrary.

Plaintiff also fails to state claims challenging the suspension and revocation of his license under the Fourth, Fifth, Sixth, Seventh, and Eighth Amendments.

The Fourth Amendment protects individuals from unreasonable government seizures of their property. *Florida v. Bostick*, 501 U.S. 429, 440 (1991). Under the Fourth Amendment, a seizure is any "meaningful interference with an individual's possessory interests in [his] property." *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017). "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). The Fourth Amendment does not apply because the FAC does not allege that Plaintiff's property was seized, and does not allege that there was any "meaningful interference" with his possessory interests in his property.

The Fifth Amendment's due process clause applies only to the federal government, not to state actors. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). There are no allegations in the FAC that the federal government was involved in the suspension and revocation of Plaintiff's medical license. In his opposition, Plaintiff also references the Fifth Amendment's Double Jeopardy clause. *See* Opp'n 11 n.2. The Double Jeopardy clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . " U.S. Const.

amend. V. While the clause "protects against multiple punishments for the same offense . . . the Supreme Court 'ha[s] long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment.'" *United States v. Camacho*, 413 F.3d 985, 988 (9th Cir. 2005) (quoting *Hudson v. United States*, 522 U.S. 93, 98-99 (1997)). The Double Jeopardy Clause "prohibits only the imposition of multiple *criminal* punishments for the same offense." *Camacho*, 413 F.3d at 988 (emphasis in original; citation omitted). Since the CMB action was not a criminal action, the Double Jeopardy Clause does not apply.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused" has the right to a trial "by an impartial jury." *See Ramos v. Louisiana*, 590 U.S. 83, 89 (2020). Here, CMB did not charge Plaintiff with a crime; rather, it alleged that he was subject to discipline based on a separate, independent felony conviction.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." *Curtis v. Loether*, 415 U.S. 189, 192 (1974). However, it is well-established that "in cases in which 'public rights' are being litigated[--] e.g. cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact[--] the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible." The Ninth Circuit has held that the Seventh Amendment is inapplicable to government proceedings implicating "public rights" where the legislature has "provided . . . a proper administrative forum for adjudicating [the] action." *Simpson v. Office of Thrift Supervision*, 29 F.3d 1418, 1424 (9th Cir. 1994). In this case, the Accusation was not a civil action seeking money damages; instead, the CMB sought to discipline Plaintiff's medical license to enforce public rights and protect the public.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "[A]t the time the Constitution was adopted, the word 'fine' was understood to mean a payment to a sovereign as punishment for

13

1  some offense." *United States v. Bajakajian*, 524 U.S. 321, 327 (1998) (citation and quotation
2  marks omitted). "The Excessive Fines Clause thus limits the government's power to extract
3  payments, whether in cash or in kind, as punishment for some offense." *Id*. at 328 (citation and
4  quotation marks omitted). According to the CMB Decision, the only "fine" assessed against
5  Plaintiff in the administrative action was $1,016.50, which represented "the reasonable costs of
6  investigation and prosecution" of the case. CMB Decision at ECF pp. 11-12. Defendants argue
7  that the FAC does not allege how the assessment of costs constituted an excessive fine. Mot. 13.
8  Plaintiff does not address the assessment of costs in his opposition; instead, he focuses on the
9  deprivation of his "livelihood" based on the loss of his medical license. *See* Opp'n 3-4. However,
10 he offers no authority that the Eighth Amendment applies beyond actual monetary fines to the
11 revocation of a medical license.[8]

Accordingly, claims 1, 2, 3, 6, 7, 8, and 9 are dismissed. Claims 1, 7, and 9 are dismissed with leave to amend, as is the portion of claim 2 based on the Fourteenth Amendment. Claims 3, 6, and 8 are dismissed without leave to amend, as is the portion of claim 2 based on the Fifth Amendment.

### 2. Claim 4

Claim 4 alleges that Plaintiff was deprived of unspecified rights because Defendants lacked standing to bring an action against him. FAC 20-21. This claim appears to be based on Article III standing, as he references injury in fact, traceability, and redressability, the three required elements of standing. *See id*. at ¶ 95. Under Article III of the United States Constitution, federal courts are limited to deciding "cases" and "controversies." *See Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009). Article III standing "is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011).

The basis for Claim 4 makes no sense because this is Plaintiff's lawsuit. Defendants did

---

[8] Plaintiff argues throughout his opposition that the Magna Carta prohibits the CMB from taking his "livelihood." *See, e.g.*, Opp'n 3, 10, 11, 12, 13, 14-16. However, "[r]emedy cannot be sought under the Magna Carta. Claims for relief must be grounded in the law of the United States or, in diversity jurisdiction, the law of a state. The Magna Carta, revered though it may be in history, is not law supporting a claim for relief." *Olajide v. Newsome*, No. C 19-08048 WHA, 2020 WL 1171127, at *1 (N.D. Cal. Mar. 11, 2020).

14

1    not bring an action against Plaintiff in federal court.  Claim 4 is dismissed without leave to amend.

2               **3.       Claim 5**

3         Claim 5 alleges that California Business and Professions Code section 2236(a) is "void for
4    vagueness" and unconstitutionally applied.  FAC ¶¶ 98-105.

5         As noted above, section 2236(a) provides that "[t]he conviction of any offense
6    substantially related to the qualifications, functions, or duties of a physician and surgeon
7    constitutes unprofessional conduct within the meaning of this chapter."  Cal. Bus. & Prof. Code §
8    2236(a).  The FAC alleges that this provision is "void for vagueness based on what the phrase
9    'substantially related' means[.]"  FAC ¶ 102.  However, "substantially related" is defined in a
10   regulation as follows: "For the purposes of denial, suspension or revocation of a license . . . a
11   crime, professional misconduct, or act shall be considered to be substantially related to the
12   qualifications, functions or duties of a person holding a license if to a substantial degree it
13   evidences present or potential unfitness of a person holding a license to perform the functions
14   authorized by the license in a manner consistent with the public health, safety or welfare."  Cal.
15   Code Regs. tit. 16, § 1360(a).  The FAC does not address this regulation or allege how the
16   regulation itself is vague.  Accordingly, claim 5 is dismissed with leave to amend.

17   **V.   CONCLUSION**

18        For the foregoing reasons, Defendants' motion to dismiss is granted as follows: Plaintiff's
19   claims against all Defendants in their official capacities for monetary damages are dismissed
20   without leave to amend.  Plaintiff's claims against Defendants Bonta and Gatschet for supervisory
21   liability are dismissed with leave to amend.  Plaintiff's claims against Defendant Ross are
22   dismissed without leave to amend.

23        Claims 1, 2, 3, 6, 7, 8, and 9 are dismissed.  Plaintiff's claims based on the Fourth, Fifth,
24   Sixth Amendment, and Seventh Amendments are dismissed without leave to amend.  Plaintiff's
25   claims based on the Fourteenth Amendment are dismissed with leave to amend.  Claim 4 is
26   dismissed without leave to amend.  Claim 5 is dismissed with leave to amend.

27        As the court cannot say that amendment is futile, Plaintiff is granted a final opportunity to
28   file an amended complaint that addresses the deficiencies set forth in this order.  Any amended

complaint shall be filed by July 29, 2024.  **Plaintiff shall plead his best case.**

The court refers Plaintiff to the section "Representing Yourself" on the Court's website, located at https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties.  Parties may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: June 28, 2024



Donna M. Ryu
Chief Magistrate Judge